Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 25 | **DATE** | 6/25/2002 |
| **CASE TITLE** | The El Ranchito, Inc. vs. City of Harvey, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order granting in part and denying in part defendants' motion for summary judgment (21-1). Pretrial order will be due by 7/26/02; and response to any motions in limine by 8/9/02. Pretrial conference set for 9/17/02 at 4:30 p.m. Trial set for 9/23/02 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 2 number of notices | Document Number |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | JUN 2 6 2002 date docketed | 38 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | 6/25/2002 | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| MPJ | courtroom deputy's initials | MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT [COURT]
FOR THE NORTHERN DISTRICT [OF ILLINOIS]
EASTERN DIVISION

*M- set trial 9/23 per Judge*

THE EL RANCHITO, INC., an )
Illinois corporation, and )
**GUILLERMO** and **ELISA RIVERA**, )
individuals, )
             Plaintiffs, )
)
   v. ) No. 00 C 25
)
**CITY OF HARVEY**, an Illinois )
Municipal Corporation, Detective )
**EDISON TORRES**, Star No. 329, )
Detective **MANUEL ESCALANTES**, )
Detective **THOMAS**, Building )
Inspector **RICHARD GINI**, and **JOHN** )
**DOES**, )
)
            Defendants. )

**DOCKETED**
**JUN 2 6 2002**

## MEMORANDUM OPINION AND ORDER

This lawsuit for civil rights violations and malicious prosecution arises in connection with a warrantless search of a bar in Harvey, Illinois. It poses questions of whether a state court ruling in a criminal suppression hearing that the police lacked administrative probable cause for a warrantless search and arrest precludes a federal court from finding otherwise in a civil rights action based on the same incident and whether police should have qualified immunity for illegal searches and protective sweeps of a business establishment conducted in the course of a supposed building inspection. The defendants move for summary judgment, which I grant in part and deny in part.

38

I.

Guillermo Rivera operates The El Ranchito Bar and Grill ("El Ranchito" or the "bar") in Harvey, Illinois. The bar had a reputation for fights and arrests, extensively documented in the defendants' exhibits. The events that are at issue in this case occurred on May 21, 1998, when City of Harvey Police officers Edison Torres, Manuel Escalantes, Joseph Thomas, and another officer, Marcano, arrived at the bar at around 3.00 p.m. with building inspector Richard Gini and another inspector, Leonard Hamble. Detective Torres testified that the officers and the inspectors did not have a search warrant, but proceeded to investigate the bar, supposedly as part of a building inspection. Pl. Ex. B at 8. Gini testified that businesses in Harvey are inspected annually. PL. Ex B at 35. Guillermo Rivera states that he was out when they arrived, Pl. Ex. A, ¶ 4, although the officers and the inspector identified him as present (see below); I credit his version for the purposes of this motion. Julio Rivera, a bartender, states in an affidavit that he was in the basement getting supplies, Pl. Ex. C, ¶¶ 5-6. Lisa Guillermo was tending bar. Pl. Ex. D, ¶ 2.

The officers and inspectors started with the basement, and when Julio Rivera came up, he was confronted with Detective Thomas's drawn gun. Pl. Ex. C, ¶ 7; B at 21 (apparently misidentifying Julio as Guillermo), 44, 54-55 (same

misidentification). Thomas handcuffed Julio Rivera, Lisa Guillermo, Pl. Ex C, ¶¶ 8,17 & D, ¶¶ 7,8, 11, 12, and arranged them along the walls, and they also put the roughly eight customers in the bar up against the walls and frisked them, Pl. Ex. B at 11. Officers Torres and Thomas went into the basement. Pl. Ex B at 9-10. The officers' testimony about whether Gini went into the basement is inconsistent. *Id.* The plaintiffs say that Gini went down first. Pl. Ex. B at 54-55, *see also* 44. I credit that version for the purposes of this motion. They also say that the officers searched the basement for 30 minutes, referring me to their Exhibit B at 12, but that record citation does not say anything about how long the officers were in the basement. Gini testified that the officers found drugs in the basement within three to four minutes after entering, *id.* at 45, Detective Thomas says about two to three minutes, *id.* at 23. The officers say they found about 65 grams of cocaine, lots of currency, and paraphernalia in the basement office, *id.*; Def. Ex., J at 54; the plaintiff offers testimony that there were no drugs in the building. Pl. Ex. D, ¶¶ 2, 14, Pl. Ex. C at 2, 3, 5, 6, 23.

The officers returned upstairs, and Officers Torres, Escalantes, and Thomas searched the first floor. During the investigation, there was testimony that someone broke open the pool tables, the popcorn machine, and cash registers, Pl. Ex. A. ¶¶ 12-13; C, ¶ 16, D, ¶ 13, and removed about $6,200. The officers deny

-3-

this. Sometime during the search the operating security cameras were dismantled and the video tapes taken. Pl. Ex. A, ¶ 12. Guillermo Rivera testifies that he arrived while the officers were searching the first floor. Detective Escalantes said, "You're the one we want." Pl. Ex. A. ¶¶ 4-6, 8-9. Guillermo Rivera was cuffed and placed against the wall; $1,300 was removed from his person, as were his keys. *Id.* These were used to open and inspect the cigarette machine. *Id.* The plaintiffs say that money was stolen from the cigarette machine. Guillermo Rivera was driven to the police station, and, he testifies, was told that the police had found cocaine in the vehicle he had driven to the bar. *Id.* at ¶¶ 10-11. He was prosecuted for the drugs allegedly found in his car and in the bar, but on June 1, 1999, the Circuit Court of Cook County suppressed the evidence, holding that the "inspection" had been a pretext for a warrantless search.[1]

In January 2000, the plaintiffs filed this lawsuit, alleging an illegal search and seizure under 42 U.S.C. § 1983 (count I) and malicious prosecution in violation of Illinois law (count II). The defendants move for summary judgment. The plaintiffs concede that summary judgment is warranted with respect to the claims of (1)

---

[1] Some of the narrative is based on the affidavits of Julio Rivera and Lisa Guillermo, Pl. Ex. C and D, who were not disclosed as witnesses as required by Fed. R. Civ. P. 26(a)(1). The defendants ask that their testimony be excluded under Rule 37(c)(1). I discuss this below.

Elisa Rivera and (2) El Ranchito, the claims against (3) the City of Harvey and (4) Officer Marcano, and (5) any events occurring on any dates other than May 21 in count I. The plaintiff also concedes (6) that there is no cause of action under § 1983 for malicious prosecution. Summary judgment is therefore granted as unopposed with respect to these parties and claims.

II.

Summary judgment is proper when the record "show[s] that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). I must construe all facts in the light most favorable to the non-moving parties and draw all reasonable and justifiable inferences in their favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue of fact "exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole." *Culver v. McRoberts*, 192 F.3d 1095, 1098 (7th Cir. 1999).

A.

Julio Rivera and Lisa Guillermo were not disclosed as witnesses. The defendants invoke Rule 37(c)(1), under which exclusion of undisclosed witnesses is "automatic and mandatory unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless." *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996). Although the nondisclosure was careless, the plaintiffs argue that it was

-5-

harmless, and I agree. These are not surprise witnesses. Julio Rivera and Lisa Guillermo, employees of El Ranchito, were main actors in the events of May 21, 1998, known to the defendants to be such both then and since, and available and obvious subjects for deposition through the close of discovery. In the interests of fairness to the defendants, however, I allow the defendants to depose Julio Rivera and Lisa Guillermo, the depositions to be taken within three weeks of the date of this order.

B.

I turn to the § 1983 claims. Although the presentation is not the clearest, there appear to be two of these that: (1) the defendants conducted an illegal search of the bar, and (2) made an illegal arrest (seizure) of the plaintiff, also stealing or illegally seizing various money and property from him and his establishment. I set aside the material question of fact about whether the officers seized or took any property that was not contraband from the premises, which depends on whether the jury believes the testimony of the plaintiff, Julio Rivera, and Lisa Guillermo that they did, or the officers that they did not, and consider the search and the arrest. These are connected: if the officers conducted a lawful search and found drugs in the plaintiff's bar, they had probable cause to arrest him. If they found no drugs but planted them in the bar to frame the plaintiff (as he contends), or found the drugs pursuant to an illegal search

(as the state court found), there was no probable cause, and the arrest was illegal.

The defendants argue that there was no search. Motion for Summary Judgment at 14-15. The bar was open, they say, and they could come in just like any other patrons. Of course, other patrons don't normally come in, as the defendants admit in response to the plaintiff's statement of additional facts, put the clientele up against the wall and frisk them, and poke around without permission in the basement looking for code violations, drugs, or whatever they were looking for. A rational jury could find that there was a search, as Officer Torres testified at the hearing on the motion to suppress.

The defendants argue as well that Officer Thomas and Inspector Gini were merely "present" at the supposed search, and should be dismissed, presumably for lack of direct involvement, although the defendants cite no legal authority, and that Detective Escalantes was not present. However, the evidence offered at the suppression hearing indicated that Officer Thomas did participate in the search. There is also evidence that Inspector Gini searched the basement. Guillermo Rivera testified that Detective Escalantes was on the scene and searched him when he arrived at the bar. The defendants say that the time sheets show that Detective Escalantes was not working on the day in question, but they do not support this with a Rule 56 reference, as required; and the detective might

have been at the bar whether or not he was signed in at work.

With regard to the arrest, the defendants say that the plaintiffs had a cigarette machine with illegal packets of cigarettes that lacked Illinois tax stamps, which justified the arrest of the owner. Guillermo Rivera was not arrested for having illegal packets of cigarettes nor was he prosecuted for the illegal cigarettes.[2] Defendants also argue that they confiscated drugs and drug paraphernalia found at the bar. As noted, the plaintiff denies that there were any drugs in the building, and indeed accuses the police of planting the drugs. Whether they did so is a jury question. The evidence of drugs was suppressed by the state court judge not because he thought that they were planted, but because he concluded that they had been discovered as the result of an illegal search. A rational jury could certainly agree that there was a search.

C.

Guillermo Rivera argues that the defendants are collaterally estopped from denying that the search was illegal because the issue was litigated and decided by the state court in the suppression hearing. The United States Supreme Court has held that state criminal proceedings may estop federal § 1983 civil actions. *Allen v. McCurry*, 449 U.S. 90 (1980) (Issue preclusion or collateral

---

[2] Defendants also argue that the fact that the cigarettes lacked stamps could be seen by anyone, but its Rule 56 Statement does not support this claim.

estoppel can be used to bar a § 1983 plaintiff from relitigating a Fourth Amendment claim that he lost at a criminal suppression hearing). The Court said:

> Nothing in the legislative history of Section 1983 reveals any purpose to afford less deference to judgments in state criminal proceedings than to those in state civil proceedings. There is, in short, no reason to believe that Congress intended to provide a person claiming a federal right an unrestricted opportunity to relitigate an issue already decided in state court simply because the issue arose in a state proceeding in which he would rather not have been engaged at all.

*Id.* at 104. Accordingly, the Seventh Circuit has held that § 1983 actions could be barred by prior state criminal proceedings.

I afford the same preclusive effect to a prior state criminal proceeding that would be given by the state's own collateral estoppel standards. *Marrese v. American Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 375 (1985) (citing 28 U.S.C. § 1738); *Studio Art Theatre of Evansville, Inc. v. City of Evansville, Ind.*, 76 F.3d 128, 130 (7th Cir. 1996). In Illinois, collateral estoppel applies when: (1) "the issue decided in the prior adjudication is identical with the one presented in the suit in question"; (2) "there was a final judgment on the merits in the prior adjudication"; and (3) "the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *Herzog v. Lexington Twp.*, 657 N.E.2d 926, 929 (Ill. 1995). Moreover, (4) "a decision on the issue must have been necessary for the judgment in the first litigation," and (5) "the person to be

-9-

bound must have actually litigated the issue in the first suit." *Talarico v. Dunlap,* 685 N.E.2d 325, 328 (Ill. 1997). Furthermore, (6) the party to be bound must have "had a full and fair opportunity to litigate an issue in a prior action," *id.*, as well as (7) "an incentive to vigorously litigate in the former proceeding." *Id.* Collateral estoppel may be invoked for conclusions of law. *Du Page Forklift Serv., Inc. v. Material Handling Servs., Inc.,* 744 N.E.2d 845, 850 (Ill. 2001).

*Allen* and the cited line of cases following it involve defensive use of issue preclusion, in which a defendant estops a federal § 1983 plaintiff from relitigating a matter that he lost in a state criminal proceeding. Guillermo Rivera wishes to use the *Allen* doctrine offensively, to estop defendants from relitigating a matter in a federal civil rights case that he says was decided in a state criminal suppression hearing. Whether this is permissible is not something that has been addressed by the Seventh Circuit. There seems to be only one Northern District case on the subject, *Jurkus v. Village of East Hazelcrest,* No. 90 C 1583, 1991 WL 127655 (N.D. Ill. July 10, 1991) (Guzman, M.J.); it supports the plaintiff's position in favor of offensive collateral estoppel.

Offensive collateral estoppel is permitted in Illinois, *American Family Mut. Ins. Co. v. Savickas,* 739 N.E.2d 445, 451 (Ill. 2000), but it is to be employed with "caution." However, I do not think it is appropriate here. First, I note that two Courts of

Appeals have held that a § 1983 plaintiff may not use offensive collateral estoppel where the state had evidence suppressed--neither, of course, involving Illinois law, although the state law in question is not significantly different for the purposes before me. *See Kinslow v. Ratzlaff*, 158 F.3d 1104, 1106 (10th Cir. 1998); *Duncan v. Clements*, 744 F.2d 48, 52 (8th Cir. 1984). These courts reasoned, first, that the police officer sued in the § 1983 case was not a party in the prior criminal case, where the plaintiff was the state and the officer only a witness, and held that the officer was not "in privity" with the state because he did not control the proceedings in which he testified. The plaintiff cites Judge Guzman's opinion in *Jurkus*, rejecting this argument, and urging that:

> [t]he fact that the prosecution of such cases is done in the name of the [state] and not in the name of the individual complainant, does not conceal or cancel the fact that it is the arresting officer/complaining witness' interests that are being prosecuted. The complaining witness is a real party in interest. He initiates the criminal charges and without his testimony, the prosecution goes nowhere.

1991 WL 127655 at *5. The rule is premised in part on the idea that officers have an interest in successful prosecution of their cases, and therefore in not having the evidence they gather suppressed. *See United States v. Janis*, 428 U.S. 433, 446 (1974). The officer was "the chief prosecution witness and his interest here in this civil case, *i.e.*, to establish the existence of probable cause, is exactly the same as the interest of the prosecution at the motion

-11-

to suppress." *Jurkus,* 1991 WL 127655, at *6. Moreover, if, as is true here, "the arresting officer [who was also] the complaining witness[] testified extensively at the motion to suppress and was able to fully and completely describe his side of the events which led up to his arrest of the plaintiff in this case," *id.,* the issue may have been fully litigated in fact.

However, since *Jurkus,* the Illinois Supreme Court has offered further guidance which, as I construe the matter, tips the balance against issue preclusion here. As noted, that Court has "cautioned against the unrestricted use of offensive collateral estoppel." *Savickas,* 739 N.E.2d at 451. It has indicated that two considerations are important: most centrally, fairness, but also incentives. The Court states that "[e]*ven when the threshold requirements are satisfied*, the doctrine should not be applied unless it is clear that no unfairness will result to the party sought to be estopped." *Id.* (emphasis added). The threshold requirements are satisfied here, but I must "balance the need to limit litigation against the right to an adversarial proceeding in which a party is accorded a full and fair opportunity to present his case." *Id.* The Court explains that offensive estoppel "could be unfair to the defendant if the prior litigation involved comparatively minor damages or if the defendant had more beneficial procedural opportunities available in the second suit which could readily change the result." *Id.* at 452.

-12-

Here, the "damages" in the first case were suppression, which was potentially embarrassing or humiliating; in the present case, the damages are monetary, with potential personal liability. See id. ("Also potentially relevant is the party's incentive to litigate the issue in the prior action."). Moreover, here the officer would have the opportunity to call and cross-examine witnesses, which he did not at the suppression hearing. In an analogous case, the Illinois Supreme Court rejected the application of offensive estoppel in a disciplinary hearing against an officer who lost a federal civil rights suit, holding that his "substantial interest in a full hearing, where the grounds for any discipline imposed will be fully and fairly litigated, militate against the application of principles of offensive collateral estoppel." *Van Milligan v. Board of Fire and Police Comm'rs of Village of Glenview*, 630 N.E.2d 830, 836 (Ill. 1994). Therefore I find that the defendants are not collaterally estopped from arguing that they engaged in a legal search of the plaintiff's bar or person. I note, however, they do not do so, but merely argue that there was no search.

### III.

Qualified immunity protects government officials from civil liability when performing discretionary functions so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). To overcome a defense of qualified immunity, the plaintiff must first allege the deprivation of an actual constitutional right, and second, show that the right was clearly established at the time of the alleged violation. *Wilson v. Layne,* 526 U.S. 603, 609 (1999); *Alvarado v. Litscher,* 267 F.3d 648, 652 (7th Cir. 2001). The inquiry is objective. *Anderson v. Creighton,* 483 U.S. 635, 641 (1987).

In support of their claim of qualified immunity, defendants argue that the law was at least not clearly established that the police defendants could not make a protective sweep of El Ranchito to protect the inspector. They also argue that the law at the time was not clearly established regarding the permissible extent of searches following arrests. However, there is a jury question about whether there was a protective sweep at all. In deciding to suppress the evidence, the state court found that the search of the basement was pretextual because there was evidence that Inspector Gini went down into the basement before the officers who had supposedly accompanied him in order to protect him, *i.e.,* he found that there was no protective sweep. A jury might so find on the same grounds.

Defendants' secondary argument, that the search was for their protection following plaintiff Guillermo Rivera's arrest, depends at the very least on questions of fact about when and where he was arrested. In addition, if as plaintiffs claim, or (especially) if

-14-

the drugs were planted, then the arrest was clearly illegal. If the arrest was clearly illegal, then, there would be no qualified immunity for a search incident to the arrest, nor, of course, for the arrest.

IV.

The defendants argue that they should be granted summary judgment on the plaintiff's malicious prosecution claim in count II. They argue that this claim is barred by the one year state statute of limitations for a claim "against a local entity or any of its employees for any injury." 745 ILCS 10/8-101. The injuries in question occurred on May 21, 1998, and the complaint says that the criminal case against the defendant was dismissed on June 1, 1998, and the lawsuit was filed on January 3, 2000. In a footnote, the plaintiff notes correctly that this was a typographical error; the correct date of the dismissal was June 1, 1999, and the suppression hearing was May 6, 1999. I may treat an argument in a footnote as waived, *Dresser Indus., Inc., v. Gradall Co.*, 965 F.2d 1442, 1448 (7th Cir. 1999), but I need not. A typographical error can be corrected. However, there would be no point in permitting the amendment if the claim would fail in any event. *DeSalle v. Wright*, 969 F.2d 273, 277 (7th Cir. 1992) (I may "den[y] leave to amend where repleading would be futile.").

A claim for malicious prosecution requires that the plaintiff show (1) the commencement or continuance of a civil or criminal

judicial proceeding by the defendant, (2) the termination of the proceeding in the plaintiff's favor, (3) the absence of probable cause for the proceeding, (4) the presence of malice, and (5) damages to the plaintiff resulting from the commencement or continuance of that proceeding. *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996). Detective Torres argues that, first, he had probable cause to prosecute Guillermo Rivera, a claim I have rejected for purposes of this motion. Detective Torres also argues, second, that the underlying criminal case was not disposed of in Guillermo Rivera's favor. A favorable termination may be found "where the legal disposition gives rise to an inference of lack of probable cause." *Cult Awareness Network v. Church of Scientology Int'l*, 685 N.E.2d 1347, 1353 (Ill. 1997). *See also Swick*, 662 N.E.2d at 1243 (a *nolle prosequi* may serve as a favorable termination unless abandonment was for reasons not indicative of the innocence of the accused). "The circumstances surrounding the abandonment of the . . . proceedings must compel an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution." *Id.* Mere dismissal or nonprosecution of the charges is not enough; there has to be something from which one can draw a positive inference of innocence. *Id.* at 1354.

Here the state court found that there was no probable cause because the search was illegal. On the other hand, the reasons that the state court gave for suppressing the evidence do not

-16-

support the inference that Guillermo Rivera was innocent. Guillermo Rivera's theory is that he was framed, that some officer (not necessarily Detective Torres) planted the drugs in his bar. He offers no evidence that Detective Torres in particular framed him or knew of the alleged frame-up. Moreover, and independently, the state court suppressed the evidence not because Detective Torres framed the plaintiff or lied on the stand, but merely because it found that because the search was illegal. In the circumstances, that is not enough:

> If the circumstances show that unreliable evidence has been suppressed and the prosecution then abandons the case because of lack of sufficient reliable evidence, that would be a circumstance where the dismissal is indicative of innocence, just as any dismissal for lack of proof is generally considered indicative of innocence. If a confession is suppressed because involuntarily coerced, then the evidence was not reliable and a subsequent voluntary dismissal based on lack of evidence would be indicative of innocence. On the other hand, if the evidence was only suppressed on "technical" grounds having no or little relation to the evidence's trustworthiness, then the fact that there was not other sufficient evidence would not be indicative of innocence.

*Dobiecki v. Palacios*, 829 F. Supp., 229, 235 ( N.D. Ill. 1993); *but see Rich v. Baldwin*, 479 N.E.2d 361, 365 (Ill. App. Ct. 1985) (dismissal only on speedy trial grounds does not bar malicious prosecution action). Therefore the dismissal of the charges was not indicative of his innocence. For this reason, he cannot satisfy the elements of malicious prosecution, and summary judgment would be warranted on this claim for those reasons. Accordingly, although the plaintiff has not formally moved to amend, it would be futile

-17-

to permit the amendment if he did so move. Either he would lose this claim because it is time barred (if not corrected) or because it is unmeritorious (if it were corrected). I grant summary judgment on the malicious prosecution claim.

V.

With respect to Count I (§ 1983), I GRANT as unopposed the defendants' summary judgment motions on (1) the claims of Elisa Rivera and (2) El Ranchito, the claims against (3) the City of Harvey and (4) Officer Marcano, (5) any events occurring on any dates other than May 21, 1998, and (6) the plaintiffs § 1983 claim for malicious prosecution. I DENY the defendants' motion for summary judgment with respect to the rest of the plaintiff's § 1983 claims for the actions of May 21, 1998 involving illegal search and arrest. I also DENY the defendant's claim to qualified immunity on those counts as depending in part on material issues of fact. With respect to Count II (malicious prosecution), I grant summary judgment. I DENY the defendants' motion to strike the testimony of Elisa Guillermo and Julio Rivera, but the defendants may depose them within three weeks of the date of this order.

ENTER ORDER:

*Elaine L Bucklo*

Elaine E. Bucklo
United States District Judge

Dated: June 25, 2002

-18-